(160 App. Div. 361)

### SHELDON v. McFEE et al.

(Supreme Court, Appellate Division, Third Department. January 21, 1914.)

1. CHATTEL MORTGAGES (§ 6*)—WHAT CONSTITUTES.

   One W. sold an interest in his business and gave the purchaser a bill of sale. The purchaser resold the interest to W., and to secure a loan from plaintiff W. had the purchaser give him the bill of sale. *Held*, that the transaction constituted a chattel mortgage, and the filing of the mortgage with the city clerk gave constructive notice of the mortgagee's title, and persons purchasing the property covered by the bill of sale took subject to the mortgage.

   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 23–41; Dec. Dig. § 6.*]

2. CHATTEL MORTGAGES (§ 229*)—RATIFICATION OF EXCHANGE OF MORTGAGED PROPERTY.

   In a suit for the conversion of property subject to a chattel mortgage, evidence *held* insufficient to overturn the verdict that there had been no ratification by the mortgagee of an exchange of the mortgaged property.

   [Ed. Note.—For other cases, see Chattel Mortgages, Cent. Dig. §§ 479–483; Dec. Dig. § 229.*]

   Kellogg and Howard, JJ., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Trial Term, Otsego County.

Action by Burton H. Sheldon against Frank McFee and others. From a judgment for plaintiff, and an order denying their order for new trial, defendants appeal. Affirmed.

See, also, 156 App. Div. 877, 140 N. Y. Supp. 818.

Argued before SMITH, P. J., and KELLOGG, LYON, HOWARD, and WOODWARD, JJ.

George Wohlleben, of Oneonta, for appellants.

Alva Seybolt, of Oneonta, for respondent.

SMITH, P. J. [1] One White was the owner of an insurance business in Oneonta, N. Y., and of some office furniture used in connection therewith, including a safe which is here in controversy. Upon the 17th of November, 1909, White sold to one Fleming a three-fourths interest in the insurance business and transferred all of the office· furniture, including this safe. It seems that Fleming's mother went on the bond of the firm to account for insurance moneys. Thereafter Fleming retired from the business and sold his interest back to White. White was to furnish $700 to pay to insurance companies moneys owing, in order to release Mrs. Fleming from her bond. That $700 was borrowed of plaintiff, and to secure him Fleming, at request of White, gave to him the bill of sale of the office furniture including the safe. This was security for some notes given to plaintiff by White to repay the amount furnished. The bill of sale went direct from Fleming to plaintiff, instead of going to White, and from her to plaintiff. This bill of sale was filed with the city clerk, where it should have been filed if a chattel mortgage. Thereafter White traded the old safe for a new one, which was smaller, with the Carey Safe Company. Of this trade plaintiff was ignorant. These defendants claim title through the Carey Safe Company. Plaintiff demanded the safe, which was refused, and this action was brought for conversion.

The transfer from Fleming to plaintiff was to secure to plaintiff payment of the notes given by White. It was therefore a chattel mortgage, and being properly filed was notice to the Carey Safe Company and all the world, so that defendants are not purchasers in good faith. The plaintiff then had the right to the possession of the safe, and the refusal to surrender the same constituted conversion.

[2] This case was here before on a judgment for plaintiff, and we reversed the judgment on the law and facts, on the ground that it appeared that plaintiff had ratified the exchange of safes. After the exchange White sold out her business to Ceperly & Morgan, and, with plaintiff's consent, sold to them certain of the office furniture, "excepting the typewriter and the safe." Afterwards White gave to plaintiff a bill of sale of the new small safe, which plaintiff sold for $50. We were of opinion that plaintiff must have known of the exchange when he took a bill of sale of the new safe and thereafter sold it. On the first trial plaintiff was not sworn. On this trial he was, and swore that he did not know of the exchange, and supposed the new safe was a new purchase. This question was squarely submitted to the jury,

which found for the plaintiff. I hardly think we should reverse a second verdict on this finding of fact.

The judgment and order should be affirmed, with costs.

Judgment and order affirmed with costs. All concur, except KELLOGG, J., dissenting in opinion, in which HOWARD, J., concurs.

JOHN M. KELLOGG, J. (dissenting). This case was before us in 156 App. Div. 877, 140 N. Y. Supp. 818, where we reversed a judgment in favor of the plaintiff. He claimed to have a mortgage on the old safe which Mrs. White traded for the new one, and subsequently he took a mortgage upon the new safe to secure the same debt. He was not sworn as a witness. We held that by taking a mortgage upon the new safe the presumption was that he, with knowledge of the facts, was substituting the new safe in place of the old one, and that he could not recover in conversion after the old safe had been sold by her to a purchaser in good faith and for value. Upon this trial the evidence is substantially the same, except the plaintiff was sworn as a witness and denies that he had any knowledge or information of the trade until after Mrs. White gave him the mortgage and had left for parts unknown. She owned an insurance business and the office furniture, including a safe. The safe was too large to be taken upstairs into her office, and was placed in the Star office on the ground floor immediately below her office, and she used it there. She sold a three-fourths interest in her business, and the furniture and safe, to one Fleming, whose mother became responsible to the insurance companies for the premiums. After a little the business proved unsatisfactory and he wanted to get out, and he resold to her his interest in the business and property in consideration of her assigning to his mother an interest in a real estate contract to save her from loss. It is evident that the plaintiff, his attorney, and Mrs. White's attorney, knew the unsuccessful nature of the business, and they must have doubted whether or not the business could continue. They knew that Fleming was willing to lose what he had put into it if he could protect his mother. It was necessary for Mrs. White to raise money to pay to the companies; she borrowed it of the plaintiff upon her notes, which were to be secured by a chattel mortgage upon the office furniture and safe.

It is evident that if she had given a mortgage to the plaintiff to secure the notes, and it had been put upon file, it would have ruined her credit and the world would have known about her financial condition what the plaintiff, his attorney, and her attorney knew. Fleming supposed he was executing a bill of sale to her of the interest in the business, furniture, and safe, the same as he had received from her. In fact, the paper he executed was a bill of sale to the plaintiff of the furniture and safe only. It was prepared by the attorneys of the plaintiff and Mrs. White, and was executed at their request. If a bill of sale of Fleming's interest was executed to Mrs. White, that fact has been suppressed. Undoubtedly some paper was executed transferring to her Fleming's interest in the business which she had purchased. The furniture, the safe, and the business were transferred to Fleming by one paper. If they had been retransferred by a like paper, and then a mortgage given to the plaintiff upon the furniture and safe, two pa-

pers only would have been required. The plaintiff's explanation that the bill of sale of the safe and furniture was given to the plaintiff for the reason that it would save making out another paper is therefore not a reason, but an excuse, and a poor one at that. This indicates clearly that plaintiff was not a purchaser taking the title to hold for Mrs. White, but was in fact taking, as they all agree he was, a mortgage upon the furniture and fixtures. The plaintiff filed the bill of sale; but Fleming did not owe him anything, and therefore there never was any mortgage from Fleming to him. As between the plaintiff and Mrs. White the transaction would undoubtedly be considered as a mortgage from her to him. The evidence shows that it was intended as such, and that it was not given with any other purpose or intent. About the time Mrs. White left that country the plaintiff filed a paper with the town clerk, purporting to be a renewal of a chattel mortgage, in which he shows clearly that the paper was intended to be a chattel mortgage from Mrs. White to him. Under the law it was the duty of the town clerk to index the bill of sale in the name of the parties thereto, so that an inquiry with reference to Fleming's property would have disclosed the fact that he had given to the plaintiff a bill of sale; an inquiry as to whether Mrs. White had executed a mortgage would not have disclosed the facts. The effect of the transaction was to conceal the indebtedness and to keep secret the lien upon the property. The Carey Company, in entire good faith, traded a new safe to her for the old safe, and it sold the old safe to one Farone, who sold it to the defendants. Shortly after the plaintiff released certain of the property from the mortgage and took a mortgage upon the new safe, so that he claims to have a mortgage for the same indebtedness upon the old safe and the new safe. There is no satisfactory reason given why the bill of sale was made from Fleming to the plaintiff. The most rational reason is that it was intended to secure the plaintiff and at the same time secrete the fact from the world that Mrs. White was under a chattel mortgage.

Justice Smith, in Dickinson v. Oliver, 96 App. Div. 65, 68, 89 N. Y. Supp. 52, 54, uses language which has full force here:

"It is very evident that, if papers such as were here executed can have the effect claimed for them, they constitute a lawful substitute for a chattel mortgage without the necessity of filing the same, and the provision of law as to the filing of a chattel mortgage may thus be evaded. That provision of law is a salutary one, made for the protection of creditors against secret liens. The courts should not be astute to find ways of rendering nugatory a salutary provision of law for the protection of innocent creditors."

If A., without money, can buy property of B., borrowing the money of C. to pay the purchase price, and can secure C. by having a bill of sale of the property made from B. to him, then the law requiring chattel mortgages to be filed is of no avail; it can readily be evaded. Where a party loans money to be secured on personal property which is to remain in possession of the owner, who is the borrower, the instrument giving the lien must be filed as a chattel mortgage against the owner, no matter what it may be called.

I am satisfied that the bill of sale to the plaintiff was made for the purpose of giving him a secret lien upon the property, and is in violation

of the spirit, if not the letter, of the law which requires it to be filed, and that as between him and the Carey Company the latter acquired a good title to the safe. It is improbable that the plaintiff and his attorney had no information that Mrs. White had traded the safe, and made no inquiry as to the manner in which she acquired the new safe. Her property was heavily incumbered; her business unprofitable. They must have wondered how she could procure a new safe. If she paid cash for it, it was cash she should have paid to the plaintiff. She did not need two safes. It is incredible that they would have released a claim upon a part of her property and taken the new safe in place of it, without some inquiry as to how it had been purchased and how paid for. I am satisfied that the plaintiff and his attorney knew, or were chargeable with knowledge, that the new safe was received in a trade for the old one, and by taking a mortgage upon the former plaintiff ratified the trade. The judgment is therefore against the evidence.

There should be an end to litigation. Upon this second trial the facts are not materially changed, so far as convincing evidence is concerned. A new trial, therefore, seems unnecessary. The judgment should be reversed upon the law and the facts, with costs to the appellant, and the complaint dismissed, with costs.